UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALTECH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 134 |
| | ) | |
| 18TH AVENUE TOYS LTD. and | ) | |
| TOYS 4 USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendants 18th Avenue Toys Ltd. ("Avenue Toys") and Toys 4 USA, Inc. ("Toys4USA") (collectively "Defendants") to dismiss the complaint brought by Plaintiff Valtech, LLC ("Valtech") pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") or, in the alternative, to transfer venue to the Eastern District of New York under 28 U.S.C. § 1404(a) ("Section 1404(a)"). For the reasons set forth below, Defendants' motion to dismiss, or in the alternative, to transfer venue is denied.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Valtech's second amended complaint are accepted as true. The Court draws all reasonable inferences in favor of Valtech. This action arises out of the

alleged infringement of Valtech's federal trade-dress rights. Valtech is an Illinois limited liability company with its principal place of business in Hodgkins, Illinois. Avenue Toys is a New York corporation with its principal place of business in Brooklyn, New York. Toys4USA is also a New York corporation with its principal place of business in Brooklyn, New York.

Valtech has several trademarked products, including plastic building blocks with magnetic strips in various shapes and colors called "Magna-Tiles Solid Colors" and a transparent version called "Magna-Tiles Clear Colors" (collectively "Magna-Tiles"). Rudolph Valenta, owner of Valtech, retains a federal registration for the mark "Magna-Tiles" for use in association with toys, blocks and puzzles (U.S. Reg. No. 2,654,320).

Valtech alleges that Defendants have sold and/or are selling transparent, colorful, plastic building blocks in various sizes and colors almost identical to Magna-Tiles under the brand names "Magnetic Stick N' Stack" and "Playmags" (collectively "Defendants' Products"). Throughout its second amended complaint, Valtech provides visual demonstratives, comparing Magna-Tiles to Defendants' Products. Valtech also claims that the packaging used by Toys4USA is identical, or at least confusingly similar, to the packaging used by Valtech for its Magna-Tiles, and provides photographs for the Court to evaluate.

Valtech argues that Defendants' Products are sold in the same marketing channels as Magna-Tiles blocks, including in toy stores, general retail stores, and on

the Internet. Valtech alleges that Defendants had knowledge of Magna-Tiles and intended to copy Valtech's trade-dress to obtain consumer recognition and interest based upon the success and reputation of Magna-Tiles. Also, Valtech alleges that Toys4USA uses nearly identical packaging to Magna-Tiles. With full knowledge and intent to copy such trade-dress, Toys4USA attempts to pass off its products as those of Valtech, creating consumer confusion. Overall, Defendants' actions have placed the valuable reputation of Magna-Tiles products in the hands of third-parties over whom Valtech has no control.

In its second amended complaint, Valtech alleges two counts: (i) product-design trade-dress infringement in violation of 15 U.S.C. § 1125(a) (Count I); and (ii) packaging trade-dress infringement in violation of 15 U.S.C. § 1125(a) (Count II). Valtech brings Count I against both Defendants and Count II against Toys4USA only. Defendants move to dismiss both counts for lack of personal jurisdiction under Rule 12(b)(2) or, in the alternative, request the Court to transfer the case to the Eastern District of New York under Section 1404(a).[1]

## LEGAL STANDARD

Rule 12(b)(2) permits dismissal of a claim based on lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The party asserting personal jurisdiction—here, Valtech—bears the burden of proof. *See Purdue Research Found.*

---

[1] In support of their motion to dismiss, Defendants provide declarations from Yacov Schwartz, the president and sole owner of Avenue Toys, and Joseph Itzkowitz, the president and owner of Toys4USA. Statements from each are incorporated in Defendants' arguments in Part I(B), *infra*.

*v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, the plaintiff need only establish a "*prima facie* case of personal jurisdiction." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)) (internal quotation marks omitted). The court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)) (internal quotation marks omitted).

To determine whether the plaintiff has met its burden, the court may consider affidavits from both parties. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). When the defendant challenges, by declaration, a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found.*, 338 F.3d at 783. While, in this context, affidavits trump the pleadings, in the end, all facts disputed in the affidavits will be resolved in the plaintiff's favor. *See id.* at 782.

## DISCUSSION

### I. Motion to Dismiss

Defendants move to dismiss Valtech's second amended complaint under Rule 12(b)(2) because they claim that the Court does not have personal jurisdiction over Avenue Toys or Toys4USA.

### A. Applicable Law

A federal court sitting in Illinois may exercise jurisdiction over a defendant only if authorized to do so by both Illinois law and the United States Constitution. *bE2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). Since Valtech brought claims under the Lanham Act, which does not authorize nationwide service of process, "the statutory basis for jurisdiction generally is provided by [Fed. R. Civ. P.] 4(k)(1)(A), which ties jurisdiction to the forum state's long-arm statute." *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, No. 10 C 4535, 2010 WL 4877708, at *2 (N.D. Ill. Nov. 23, 2010). "Under Illinois law, a court may exercise personal jurisdiction over a non-resident through operation of its long-arm statute." *Labtest Int'l v. Ctr. Testing Int'l Corp.*, 766 F. Supp. 2d 854, 858 (N.D. Ill. 2011) (citing 735 ILCS §5/2-209). The Illinois long-arm statute grants personal jurisdiction over: (i) claims arising out of certain actions and activities, including transacting any business or committing a tort in Illinois; (ii) over any corporation doing business within Illinois; or (iii) on any basis permitted by the Illinois or federal Constitutions. *Id*. The Seventh Circuit explained that there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction.' " *Id*. at 859 (quoting *Hyatt Int'l Corp.*, 302 F.3d 707, 715 (2003)).

Personal jurisdiction may be either general or specific. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 754-55 (2014)). In the instant matter,

Valtech does not allege that general jurisdiction exists, and argues solely that it has established specific jurisdiction. There are three requirements that make specific jurisdiction appropriate: (i) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (ii) the alleged injury must have arisen from the defendant's forum-related activities; and (iii) the exercise of jurisdiction must comport with the traditional notions of fair play and substantial justice." *Id*. at 801 (internal citations and quotations omitted). "Specific jurisdiction is available for a suit that arises out of the forum-related activity." *Id*. at 800. It grows out of "the relations among the defendant, the forum, and the litigation." *Id.* at 801. "The mere fact that [Defendants'] conduct affected [Valtech] with connections to the forum State does not suffice to authorize jurisdiction." *Walden v. Fiore*, 134 S.Ct. 1115, 1126 (2014) (citation omitted). Furthermore, the relationship between [Defendants] and the forum "must arise out of contacts that [Defendants] create[ ] with the forum State." *Id.* at 1122 (citation omitted). Moreover, the "'minimum contacts' analysis looks to [Defendants'] contacts with the forum State itself, not [Defendants'] contacts with persons who reside there." *Id*. "[Valtech] cannot be the only link between [Defendants] and the forum." *Id*.

With respect to trademark disputes, the Court must be satisfied that Defendants' conduct was: (i) intentional; (ii) expressly aimed at the forum state; and (iii) undertaken with the knowledge that the plaintiff would be injured in the forum

state. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783, 789-90). In the Internet context, there is no specific jurisdiction where the defendant's contacts with the forum state are "entirely fortuitous." *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 803. Where a company "h[olds] itself out as open to do business with every state" and then reaches into the forum state by selling its services to customers there, specific jurisdiction over it is proper. *Ill. v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (where the court had specific personal jurisdiction over an internet seller of cigarettes who sold and shipped to Illinois residents).

### B. Parties' Arguments

Defendants argue that Valtech's allegation that Defendants "have both sold the accused infringing products in Illinois" is not enough to establish personal jurisdiction. Also, Defendants aver that they did not have minimum contacts with Illinois, and even if they did, that Valtech has not alleged that Defendants targeted or intentionally solicited customers in Illinois that would prove that Defendants' activities were purposefully directed toward consumers in Illinois. Consequently, Defendants state that their operation of websites accessible to Illinois customers is not enough. As an additional argument, Defendants claim that their alleged sales to Illinois residents are *de minimus* (Toys4USA: 21 websites sales, totaling approximately 0.7% of sales during that time period and $1,540.00 in total revenue; and Avenue Toys: nine website sales, totaling less than .001% of sales during that

time period and $730.56 in total revenue) and do not create specific jurisdiction. Finally, Defendants find that even if the Court were to find that the minimum contacts standard was met, personal jurisdiction over Defendants is contrary to fair play and substantial justice.

Valtech responds, claiming that Defendants' actual sales to customers in Illinois, alone, regardless of the percentage and the existence of Defendants' websites, constitute minimum contacts and subject Defendants to specific personal jurisdiction in this Court. Valtech further explains that the *de minimus* nature of Defendants' sales in Illinois, compared to overall sales, does not negate the existence of specific personal jurisdiction because Defendants affirmatively conducted business in Illinois. Valtech focuses on *Dental Arts*, where the court still found that the defendant's sales (1.2% of gross revenue) in Illinois were sufficient to confer personal jurisdiction. 2010 WL 4877708, at *7. The court in *Dental Arts* explained:

> "[t]hat Defendant's sales in Illinois form a relatively small part of its business is irrelevant to the personal jurisdiction analysis under these circumstances. Each time that Defendant used its allegedly-confusing name in Illinois a tortious act allegedly was committed. As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant." *Id*. at *7.

As a point of clarification, Valtech reminds the Court that it does not assert that specific jurisdiction is tied to the existence of Defendants' websites alone, but that Valtech's claims for trade dress infringement arise out of or relate to their minimum contacts because Defendants' sales are the very tort for which Valtech seeks redress.

Valtech also provides several reasons why requiring Defendants to litigate this action in Illinois would comport with traditional notions of fair play and substantial justice.

### C. Whether Defendants Purposely Availed Themselves of Doing Business In Illinois and Whether Valtech's Claims Arise Out of Such Availment

In the instant matter, Defendants' Products reached Illinois consumers through various online sales. The recent decisions in *Walden* and *Advanced Tactical Ordnance Sys.* support the Court's finding that Defendants had contacts with Illinois separate and distinct from the fact that Valtech functions as an Illinois corporation. Valtech is not the only link between Defendants and Illinois—Defendants reached into Illinois when they apparently sold (and sometimes shipped) their infringing products to Illinois residents with the knowledge that Valtech would be injured in Illinois, satisfying the factors outlined in *Calder*. *See Tamburo*, 601 F.3d at 703 n.7 ("*Calder* speaks directly to personal jurisdiction in intentional-tort cases; the principles articulated there can be applied to cases involving tortious conduct committed over the Internet.") Although Defendants' sales in Illinois are very minimal in comparison to overall sales, these sales to Illinois residents still occurred, each resulting in an alleged intentional tort.

As to the Internet nature of this case, there is no evidence that Defendants' online sales within Illinois residents were utterly fortuitous. Defendants aimed their alleged tortious products to residents in all fifty states and "made [their] services available to anyone by way of [their] website[s]." *See Payton v. Kale Realty*, 13 C

8002, 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014). By placing its product into the national stream of commerce, in combination with operating an interactive website to order their products (even through Amazon.com), Defendants have met the minimum contacts necessary to purposefully avail itself of the privilege of acting in Illinois, subjecting them to applicable Illinois law[2]. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F. 3d 440, 446 (7th Cir. 2010) (where "[a] defendant's deliberate and continuous exploitation of the market in a forum state, accomplished through its website as well as through other contacts with the state, can be sufficient to establish specific personal jurisdiction.")

Concerning whether Valtech's claims arise out of Defendants' forum-related activities, Valtech alleges that its injuries—trade-dress violations—arise directly out of Defendants' minimum contacts with Illinois residents. The Court agrees with Valtech's claims that the alleged similarity of the toys and packaging were copied to "influence purchasing consumers, the effects of which were felt in Illinois because the product was purchased in Illinois." *Toddy Gear, Inc. v. Cleer Gear, LLC*, No. 13 C 1926, 2013 WL 6153052, at *2 (N.D. Ill. Nov. 22, 2013). The allegations show that Defendants' tortious conduct was done for the purpose of causing Valtech injury in Illinois—competing for potential sales in Illinois with products that infringe on Magna-Tiles' trade dress. With this reasoning, Valtech has satisfied its burden of

---

[2] The fact that Defendants have no assets, property, places of business, bank accounts, offices, real estate, agents, independent contractors or employees in Illinois does not negate exercising specific jurisdiction.

making a *prima facie* case that Defendants have adequate minimum contacts with Illinois such that exercising specific personal jurisdiction is necessary.

### D. Traditional Notions of Fair Play and Substantial Justice

The Court must also determine whether the exercise of personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Factors to consider include: (i) the burden on the defendant; (ii) the forum State's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 667 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Some of the factors are more germane to the instant matter than others. For instance, Defendants, as New York corporations, may be burdened by having to defend their case in Illinois, but "out-of-state defendants always face such a burden," *Payton*, 2014 WL 4214917, at *4 (quoting *Felland*, 682 F.3d at 677), and much of what Valtech seeks in terms of relief aligns with Illinois' ability to provide a forum which its residents (i.e. businesses) can protect their intellectual property rights. *See Ty, Inc. v. Baby Me, Inc.*, No. 00 C 6016, 2001 WL 34043540, at *6 (N.D. Ill. Apr. 20, 2001). Moreover, Illinois has a substantial interest in providing a forum for its residents and local businesses to seek redress for injuries caused by out-of-state actors

and of which are suffered within Illinois. Valtech, an Illinois corporation, undoubtedly finds that this forum is the most convenient and effective for it to seek relief, also weighing in favor of keeping the matter here. Since both Illinois and New York have a shared interest in ensuring that trade-dress violations do not injure their respective residents, this factor becomes futile. After evaluating these factors, the Court exercising its personal jurisdiction over Defendants does not affront the traditional notions of fair play and substantial justice, and Defendants' motion to dismiss under Rule 12(b)(2) is denied.

**II. Motion to Transfer Venue**

Even if the Court decides that it is appropriate to exercise jurisdiction over Defendants, Defendants still ask for the Court to transfer the case to the Eastern District of New York pursuant to Section 1404(a). Under Section 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest[s] of justice . . . transfer any civil action to any other district or division where it might have been brought . . ." 28 U.S.C. § 1404(a). Transfer under Section 1404(a) is appropriate if three requirements are satisfied: (i) venue is proper in both the transferor and transferee court; (ii) transfer is for the convenience of the parties and witnesses; and (iii) transfer is in the interests of justice." *Midas Int'l Corp. v. Chesley*, 11 C 8933, 2012 WL 1357708, at *2 (N.D. Ill. Apr. 19, 2012) (internal citations and quotation marks omitted).

The first requirement is satisfied because venue is proper in this District and in the Eastern District of New York since both Defendants' principal places of business are in Brooklyn, New York. When evaluating the remaining requirements, the Court considers private and public interests. As the party seeking the transfer, Defendants bear "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

### A. Private Interest Factors

When analyzing convenience, the Court considers private interest factors, including: (i) the plaintiff's choice of forum; (ii) the situs of the material events; (iii) the relative ease of access to sources of proof; and (iv) the convenience to the witnesses and parties. *Midas*, 2012 WL 1357708, at *3 (internal quotation marks and citation omitted).

Valtech has chosen to bring suit in this District, where its principal place of business is located. Under Section 1404(a), this factor is given "substantial weight . . . particularly where it is also the plaintiff's home forum" and weighs against transfer. *Midas*, 2012 WL 1357708, at *3 (citation omitted).

With regard to the situs of material events, Defendants allege that most of the events giving rise to the trade-dress cause of action occurred outside of Illinois, including the fact that Defendants conduct their sales of the alleged infringing products out of Brooklyn. Valtech disagrees, stating that Defendants' infringing

conduct caused an injury felt in Illinois. After review, this factor weighs in favor of transfer to New York because "[t]he 'material events' inquiry, however, focuses on the location of the actions creating the injury, not the location of the injury itself." *Events News Network, Inc. v. Thill*, 05 C 2972, 2005 WL 2978711, at *4 (N.D. Ill. Nov. 2, 2005) (citation omitted).

Defendants assert that the relative ease of access to sources of proof weighs in favor of transferring the case to New York because Defendants' employees and potential third-party witnesses are located in New York. Defendants argue that the Court will not have the ability to compel those witnesses in New York to testify in Illinois if they are unwilling to travel voluntarily. Nevertheless, as to Defendants' employees, Valtech is correct, "[c]ourts typically presume that witnesses who are parties' employees . . . will appear voluntarily and therefore are less concerned about the burden that appearing at trial might impose on them." *Abbott Labs v. Church & Dwight, Inc.*, 07 C 3428, 2007 WL 3120007, at *4 (N.D. Ill. Oct. 23, 2007). With respect to potential third-party witnesses, Defendants complain that Playmags, Inc., a company that sells Defendants' Products to Toys4USA, will not appear because it falls outside the Court's radius of subpoena power. The Court takes this concern into consideration. However, because this factor assesses the relative ease of sources of proof, the Court holds that all parties can easily access most sources of proof in this case through readily transferable electronic discovery, weighing in favor of keeping the case in this District.

Finally, a party moving for transfer must show that the original forum is "clearly less convenient for its witnesses." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 962 (N.D. Ill. 2006). It is clear that transferring the case to the Eastern District of New York would make litigating the case more convenient for Defendants, but less convenient for Valtech. Defendants argue that this District is an inconvenient forum for them because they will be required to litigate in a location where they had no connection. Besides this bald assertion, Defendants have not provided any other reasoning, as required, to show that the Eastern District of New York would be "clearly more convenient" than this District. They fail to reference particular circumstances for the Court to assess. Yet, taking Defendants' prior concerns about compelling third-party witnesses (in their argument for the relative ease of access to sources of proof factor) into consideration, pertinent discovery can certainly be conducted outside of this District, and if witnesses refuse to travel, the Court does not find that reading their deposition testimony instead of live testimony during trial would negatively affect Defendants' case. Since it would be equally as inconvenient for both parties to litigate this case outside their home states, and "transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for another party," this factor weighs against transfer. *Sage Products, Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993) (citations omitted).

As a whole, the private interest factors weigh against transfer to the Eastern District of New York.

### B. Public Interest Factors

When determining the interests of justice requirement, the Court must consider the following public interest factors: (i) the congestions of the respective court dockets; (ii) prospects for a speedy trial; (iii) the respective desirability of resolving controversies in each locale; (iv) the court's familiarity with the applicable law; and (v) the relationship of each community to the controversy. *See Research Automation Inc. v. Schrader-Bridgepoint Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted).

Using statistics provided by Defendants, it appears that the Eastern District of New York's overall docket is less congested. This factor weighs in favor of transfer. However, the Court finds that the difference in time to trial between the two districts (it is approximately two months faster in the Eastern District of New York) is a neutral factor because the time difference is so minimal. *See Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009) ("General statistics of this sort are . . . relatively meaningless in the section 1404(a) analysis. They consist of averages for cases of all types and tell the reader nothing about cases of the particular type at issue."). Additionally, the judges in both districts are equally familiar with relevant federal law, and both competent if chosen to preside over this case, so that factor is also neutral. Lastly, as stated earlier in Part I(D), *supra*, both Illinois and New York have a shared interest in ensuring that trade dress-violations do not injure their residents, but because the injury to Valtech occurred in Illinois, this

factor weighs against transfer. Put simply, Illinois should have the ability to protect the intellectual property rights of its businesses and overall, it has a stronger relationship to the controversy than New York because Defendants' actions injured an Illinois business. Together, these public interest factors, which evaluate the interests of justice, do not weigh in favor of either forum.

On balance, the private factors weigh in favor of this District and the public factors are neutral (not weighing in favor of either forum). Thus, Defendants fail to make the requisite showing of why the Eastern District of New York is clearly more convenient. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d at 665 (the plaintiff's choice of forum is usually favored "unless the balance is strongly in favor of the defendant."). The motion to transfer venue is denied.

## CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss, or in the alternative, to transfer venue is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: 2/12/2015